Next case on our call the docket is agenda number five case number one one one zero eight three and radar these are initial C at all minors versus Daryl Crockett counsel for the appellant may proceed may it please the court and counsel my name is Adele safe and I represent the respondent Daryl Crockett mr. Crockett is asking the court for relief from the judgment terminating his parental rights he asserts that the order of wardship and the order terminating his parental rights are both void notice by publication was ineffective to confer personal jurisdiction of him both at the initial wardship phase and at the termination phase because the court failed to obtain personal jurisdiction of him its orders are void section 2-16 sub 2 of the juvenile court act governs notice by publication again the record seems to say that the defendant had multiple addresses in various cities all around Illinois is that correct no I don't believe so your honor did you have more than one address I think that well DCFS did three different searches I'm sorry DCFS did three different searches it performed three what it calls comprehensive diligent searches which are searches of a database that's company and the first database search was done in October of 2006 and it actually misspelled mr. Crockett's name there were two subsequent it turned up an address it turned up an address in Peoria which was not his and that letter was returned to DCFS subsequently they did searches I'm not sure exactly how they got his correct name but in December of 2006 and I believe again in the spring of 2007 they did a search using his correct name and at the time of the second search or the results of the second search turned up some addresses in Chicago and some addresses what do you mean by some there were addresses that I believe approximately I think I think at that point two or three and the third the third one turned up several more so each time address should he have been served at he should have been served at presumably at the time the case started he was then residing with his sister in Villa Park Illinois and how would the department know this the department could have found out if it had done a proper investigation a diligent investigation instead what the department did was it simply asked the mother of the children for his address she said oh well it asked the investigator asked the mother his name and where he lived and she said that he lived in Chicago but she did not have an address for him so that was as far as the investigation went the investigator did not question the children the investigator did not question the hotline reporter was he paying support at this time he was he was paying through his Social Security disability insurance benefits the state check showing a return no no it was done through Social Security okay I proceed section 2-16 sub 2 of the juvenile court act governs notice by publication against respondent parents 2-16 sub 2 requires first that a diligent inquiry be made to ascertain the respondents current and last known address second it requires that DCFS quote adopt rules defining the requirements for conducting a diligent search to locate parents of minors in the custody of the department third it states that if the respondents usual place of a boat cannot be reasonably ascertained or if respondent is concealing his or her whereabouts to avoid service of process then petitioner's attorney shall file an affidavit showing that respondent undue inquiry cannot be found fourth it requires that the affidavit shall state the last known address of the respondent and fifth section 2-16 sub 2 requires that the affidavit shall also state what efforts were made to effectuate service mr. Crockett asserts that the affidavit for publication that was filed at the courtship phase did not comply with the requirements of section 2-16 sub 2 the affidavit was defective on its face first the affidavit failed to state what efforts were made to effectuate service second DCFS did not perform what it called a comprehensive diligent search until one month after the affidavit for publication was filed moreover the record reflects that DCFS failed to make a diligent inquiry into mr. Crockett's current and last known address DCFS as I said to the court earlier did nothing more than ask the minors mother for mr. Crockett's address miss yes excuse me the legislature has stated that the state need only conduct a diligent inquiry isn't that right a diligent inquiry and promulgate rules for a diligent search and so but you're seeking personal service in essentially it seems like all termination cases unless the state exhausts all avenues I think that the I think that the Constitution the US Constitution requires that avenues be exhausted I think that the the requirement for a diligent inquiry is really the key in this particular case because our position is that the inquiry was not was not diligent when DCFS also may I ask you to be a little more precise about the issue that you're raising because I'm really confused about that certainly are you saying the affidavit was insufficient are you saying that the search that later when there were two fourteen or one petitions filed the facts that were elicited show that there was not a diligent search are you saying that it was done too late I'm not really sure what your issues I'm saying basically all of what the court just recited we have because we are asserting that the order of wardship was void we are required to to prove to the court that the record on its face is sufficient to show that the court never acquired personal jurisdiction and so what we are arguing is that the affidavit because of its defects its facial defects what are the facial defects I think I gave you three issues you said all facial defects are number one that it did not state what efforts were made to effectuate service number two that it did not do a diligent search and this is a term of art that DCFS uses a comprehensive diligent search we wouldn't know that facially right we're gonna start we start with the facial defects what you're talking about then is that how they did the search first you say it's it's facially it was facially defective because it did not set out we did one two three and four correct and you believe that's required I did the the case law says that we need to prove from the record on its face so we're looking first at the affidavit and well it's facially defective in that it does not state what efforts were made if you look at the record the court would see that this comprehensive diligent search was not performed until after the affidavit was filed and the argument here is that it needs to be performed before the affidavit was filed in that this is a request for constructive service of a respondent so let me see this so the affidavit was filed and you're saying sometime later the evidence showed there was an attempt to find an address whether it's diligent or not is another question but there was it was after the affidavit was filed yes the affidavit was filed in September of 06 and four weeks late on October of 06 that particular database search was performed and when did the court the court enter its order of worship in relation to that search when it the order of worship that was also in October I think it was in October so was it after the diligent search or with a search took place yes I believe so but returning then to the statements of the mother to DCFS she she indicated to the investigator and this is looking at it retrospectively because these these facts were not ascertained until after the petition for relief was filed the diligence or lack of diligence of DCFS and their sir their investigation was actually evidence that the court had requested on its own motion and that the presented subsequently but the mother said that mr. Crockett lives in Chicago but she did not know his address and we we it's our position that she was not being truthful mr. Crockett sister Stephanie McLean testified and this was at the 42-1401 petition hearing that mr. Crockett had resided in her home from 2003 to 2008 apart from periodic psychiatric hospitalizations mr. Crockett had received a diagnosis of schizoaffective disorder bipolar type in approximately 2003 before then he had resided with the minors and their mother and he had actually worked as a paralegal before the onset of his mother called miss McLean's telephone number frequently to talk to mr. Crockett and that the children and their mother had attended family gatherings in miss miss McLean's home miss McLean's testimony was not rebutted apart from asking the children's mother for mr. Crockett's address DCFS made no further inquiry regarding him and I would ask the court to recall that the children were taken into custody because the mother had tested positive for cocaine and cannabis she evidently had an expensive drug habit that DCFS did know about the hotline caller had told DCFS that the minors were in poor condition how is that relevant to our issue well this is relevant to the issue of the the diligent inquiry that the statute requires yes is that isn't that the issue that we have here before us yes how is her drug habit relevant to our inquiry our question about whether or not this is a diligent inquiry well I think it can be inferred that the mother was trying to keep both DCFS and mr. Crockett in the dark about the juvenile court case she continued to receive $900 in Social Security disability benefits but why does that make DCFS's attempts not diligent if they're checking these databases and they're communicating with the mother and they're not finding him why is their search not diligent I think that I think that constitutionally a search requires a little bit more I think that it's not enough simply to ask one person these the hotline reporter called and said that these kids were in really poor condition they get Social Security benefits and DCFS never asked the mother to verify her her income she claimed that she herself rate received Social Security benefits but they never asked her to verify it and at at the hearing on the the 2-1401 petition mr. Crockett provided proof that she had in fact been receiving almost $900 a month but the court is correct I mean this came in later at the requests of the trial court and our main but our main thrust really is that the affidavit was facially defective and that the diligent the database search had not been done in a timely way I think I read that when the petition for adjudication was filed they listed they incorrectly spelled your clients name correct and enlisted him as being an inmate at Sheridan Correctional was he was he was never does the record explain it doesn't how that came about it does not I don't know how we don't know how they got the wrong spelling or all that information no it's not the record does not reveal that information what was the date when he was released from that correctional facility oh he was never in a correctional oh I thought what was the reference to was it Sheridan Sheridan right that was listed in the petition for adjudication as his address but that was incorrect okay so he was never there he was never there excuse me and when did we how do we find that out or do we know it was I think it was after that that the affidavit for publication was yes but we don't know we it's not on the record and I can't speak to that your honor thank you Mr. Crockett asserts that the court further erred in finding that the affiance failure to state what efforts were made to locate Mr. Crockett did not render service by publication ineffective the court below relied on in Ray DJ as its authority the court and in Ray DJ in fact did not did excuse the lack of a statement of efforts made to effectuate service in the affidavit for service by publication but it only did so because there had been sworn testimony in the case about the efforts that had been made in DJ the DCFS worker testified that she had done a public aids check she had interviewed the mother she had spoken to the private agency caseworker assigned to the case she had checked the telephone book she had called the Illinois Department of Corrections she had called the Cook County Jail may I ask you this question if you're the light turns right here you you argue at length in your brief that in fact the state did know an address for him correct I argue that the the state child support enforcement program how how does that come into the record how does the information about the child support case etc how does that come into our record well there's a couple of ways um it was uh it was the court was asked to take judicial notice of that particular case on two occasions um during the 2-1401 proceedings and it did so without objection by the state so if we look at the record of the 2-1401 the someone handed this a document to the court and asked the court to take judicial notice was there any other evidence about that any other there was witness testimony affidavits other than the document there was at the best interest hearing and determination uh of uh there was one um witness who testified and that was a case worker who testified that um she had received his address from a public or from public aid um and that he was paying child support and um at the court and the court mentioned oh he's paying child support she said yes through his uh disability insurance through social security but what we're going to be looking for in the record will show us that look here's evidence that the state actually knew where he was yes in two there were a couple of hearings on the 2-1401 petition and at both hearings the court took judicial notice of that case are you referring to the december 7 2007 letter from the mclean county state's attorney's office to this individual in lake county yes your honor that's part of that um well i mean was there another document that you're referring to i'm referring to the actual case it's a supplement or supplemental um uh volume which is um mclean county case 07 f 401 which is part of the um the record which is is provided i guess i'm just trying to clear up what justice tice has to buy a document that that you said was was entered without objection that they took judicial now oh i'm sorry i meant the case file the whole case file yes your honor in the child support case yes and who presented this to the judge um these two occasions mr crockett's attorneys he had a he had a attorney a child he was there yes could the attorney just and he had a client evidently he was talking with couldn't he just give the address rather than having the court take judicial oh no that was just to prove to the court that the dcfs or that the state actually had had actual knowledge of this is after the fact after yes your honor i think i've run out of time thank you good um excuse me good morning your honors and may it please the court i'm mary walsh i'm here on behalf of the people of the state of illinois the question in this case is not whether this court should vacate the termination order the question is whether the the circuit court abused its discretion in denying the petitioner mr crockett's post-judgment motion and and here the answer is no the circuit court didn't do that because his motion was untimely it was filed more than one year after the termination order and there is no defect on the face of the record at the time of the termination order that shows that that order was void for lack of personal jurisdiction excuse me wasn't the termination order entered march 7 2008 and and the respondent filed his petition on september 25 2008 it was 2007 your honor that the termination order was entered okay 2007 right but wasn't there a second one no your honor there was there were three perhaps i'm mistaken at the there were three post-judgment motions the third one which is the one that is at issue here is the only is was filed more than one year after the termination order wouldn't relate back to the one that was filed previously no your honor and certainly mr crockett's never argued that there are as as the court indicated earlier there there are only two facial challenges based on the record before up to the termination order council was talking about the record after the termination order and the question here that the circuit court was was looking at is what was on the face of the termination uh face of the record of the termination order there were only two challenges to the face of that record one is the missing words on the first affidavit that that affidavit does not state that no efforts were made to affect service but just as in allen just as in reedy this is inferable from the face of the affidavit itself which says his address is unknown upon diligent inquiry we can't find him and and so we cannot make service and so to say and no effort of service was made because we don't have his address because his address is unknown is redundant and that's really the same thing that um the court excuse me um the court held in dj which was it had the virtually identical language and what the court there said is this affidavit is sufficient even though it doesn't say no efforts were made to make effect sir effectuate service because it's obvious that if you don't have an address for somebody you can't effectuate service and so counsel let me let me back you up does the statute and does the affidavit that was filed ask the question or state the question the last known address um the um we'll ask for the place of abode the usual place of abode i mean the affidavit to be able to proceed by publication does it not require that you state at a minimum the last known address well yes the current one or not but the last no right and here the last known address was listed as unknown so that means one of two things it really was unknown meaning you had no knowledge where he wrote the affidavit out of any address for him correct we did not because the mom at that point the mom was the only person we had talked to we had not we initiated but not completed the diligent search and the mom said he's in the chicago area as it turns out he was in you know philip park and later he was in lake county which those of us in chicago would not think of as chicago but um but that was all we knew at the time and then and and again there are a couple more problems though with this affidavit argument the the this magic word argument not just that that the courts to hold that strict compliance is jurisdictional is without any supporting authority and in fact both reedy and al and the cases we cite in our brief show that although this would perhaps this could this could be sufficient for reversal on direct appeal on collateral attack it's not sufficient so there's a big difference and and you know mr crockett um cites sarkeesian that case but that case was also um a um that case is is different from this one in that there the record was clear on its face that service was improper as the court may recall service was on um they were saying services on the wrong person on its face because you served the receptionist and not the actual person counsel was the affidavit related to the termination hearing filed a month too late or not the the effort i'm sorry was the affidavit filed a month too late did it miss the deadline by a month no your honor maybe i don't understand the question this first there were two affidavits there was one affidavit it was filed before the search was finished but again there are there are a couple of things one is that if the affidavit had been filed after the search its its contents would have been no different because we still couldn't find him we found the address in peoria we sent a letter there the letter came back so we still didn't know where he was and in addition the only reason plaintiff is challenging this and that that makes that this part of the case moot because the adjudication order was an interlocutory order and and didn't really affect plaintiff's rights what plaintiff i'm sorry mr crockett's rights what affected his rights was the termination order and that came after the second affidavit which itself came after the third diligent search and the third diligent search led to addresses where the mr crockett's parents lived where he used to live where his sister lived where he also used to live for seven years from 2000 to 2007 and we're playing where mr crockett also said i still accept mail now and none of those letters unlike the letter to peoria none of those letters was returned and in addition before the termination order there was miss seidelman the caseworker saw the complaint for child support which listed plaintiff's address as his sister's address the same address we had sent letters to that had gotten no response no return and we she sent a letter to him at that address saying you know this termination case is going you need to get in touch with us nothing when the department is aware that a party is receiving social security benefits does social security cooperate with the department in providing an address when they're sending the main check to the to the recipient we do not have the dcfs does not have access to the social securities database and what happened was the the mother told dcfs i'm receiving social security questions i'm sorry do they social security would they respond to an inquiry no because they without a release no and the testimony at the 214-01 hearing said no we could not get that information without a release which and we couldn't find him so we couldn't get a release i have to ask a question about timing um how can the state be uh inquiry seem diligent if the affidavit actually was filed four days after the adjudication no the affidavits no there was the the temporary custody hearing the shelter care hearing then there was the affidavit then there was the search then there was the adjudication hearing does the record reflect that the affidavit was filed four days after the adjudication no the record reflects it was filed i believe three days after the tc hearing after the temporary custody hearing for two days i can't remember exactly but remember also um 212 requires that if after the temporary custody order which is the first order in this case after that order if you have not if if the um the there has not been service personal or certified mail service within 20 days you have to do service by publication and that's really what first service by publication here was so i mean it's it's a statutory mandate that we try service by publication but again the any problem with the the first affidavit is moot because that only resulted that only occurred before the adjudication order and and that's the only order that that mr crockett is challenging for that particular defect but if you follow the statute doesn't that affidavit um isn't that insufficient because doesn't it require that um you state actually in the affidavit what effort you made for um diligence and search well yes your honor i mean technically yes but again that technical requirement you can infer from the from the language of the affidavit and if i may i'll read it the the affidavit itself's respondent below cannot be found within the state so the process cannot be served upon him or her um his address cannot be ascertained upon diligent inquiry the last known address is unknown and so so to have to in addition say and because we don't know his address because we can't find his place of abode no we haven't made any efforts to serve him it would be is unnecessary that's what in fact what's effectively held that's what really effectively held it's definitely you know what dj held because the affidavit and dj was virtually identical to the affidavit in our case and and while it's true that testimony in dj also discussed um the diligent search and the criteria you know the the efforts for the diligent search dj made a different differentiated between the affidavit and then testimony with regard to the search and again in the statute 212 doesn't even require that the affidavit describe the search it just requires an affirmation that there was a diligent search i'm trying to understand your argument on the timing in response to justice burke's question you said i believe you said there was an affidavit of publication and then a diligent search but all that which arguably with respect to that i mean it seems a little curious isn't it that the affidavit comes before the diligent search but you're saying that the order in question the only publication in question the only issue in question there was a diligent search done before that is that fair yes your argument well that's that's my argument is about threefold one is that it's moved because the only problem that they have with this affidavit or the only the only remedy they want is to vacate the adjudication order which was an interlocutory order and and so that that's you know the water's under the bridge on that because we got to termination and also there was really no harm to mr crockett from the adjudication order the second argument i'm making is that even if there were harm because um because that defect is a um that defect is only technical because you can infer from the language i just read that the um that no efforts were made because his address was unknown and he couldn't be found so so those are the reasons that we say that the the lack of language in the affidavit um is not a problem and then as to the timing also it's the same thing the condition precedent first of all there's no authority that that the condition precedent problem is it jurisdictional but second of all there was no harm from this because if the affidavit had been filed after that first center search diligence search it would have said the same thing we can't find him it doesn't say what you actually didn't find him well yes but the statute doesn't require us to do that in the affidavit itself and in addition within the record there were service reports and so on which said we talked to them which the court had at its disposal we talked to mom the mom said she doesn't know where he is he said you know he um he calls us from pay phones so that we didn't have a phone number for him and so on so all of that information from the case worker and from the investigator was there in front of the court so the court knew at the time of the adjudication hearing what the efforts had been but in addition remember it's really this problem is really moot because it's about an interlocutory order that that didn't really affect Mr. Crockett now so those are the only two arguments on attacking the record on its face at the time of the of the termination order just the lack of of language about what the efforts what efforts were made and the effort was none I mean the court below held it's obvious that if you don't know where a guy is you can't serve him and the other argument is the condition precedent argument but again that's moot because the only remedy they want is vacature of that particular order so so then we reach the question of was there jurisdiction for the um was there jurisdiction for the termination order and certainly there was there were two more searches and and um the court knew this at the time there were two more searches through the center they revealed letters that were sent to the plaintiff to Mr. Crockett and which were never returned they were sent to his parents address where he had lived and where he testified he still accepts mail they were sent to his sister's house on two occasions once the to whom it concerns letter and once when when Seidelman the caseworker discovered when she verified the child complaint that the um that there was an address on there which again was his sister's address where they had already sent letters that were never returned but she sent another letter which was never returned at that point counsel let me know when you say never returned you mean like a certified mail receipt or no I mean like a bad address I mean like the letter itself remember that the letter to Peoria to the that came up in the first search came back to us came back to us but we knew that that one was ineffective but those other letters never came back all right let me let me ask you this if they didn't come back somebody didn't somebody chose not to send them back that's a fair reading of these facts I think was there ever a complaint summons papers sent to the sheriff to serve at those addresses in Lake County well interesting in Chicago interestingly there for the child support case the summons in this case in this case no because they never came back so we didn't know so there was never an attempt at personal service no because the letter because the letter and remember you know for example in flower well in flowers for example what they said was when when the certified letter came back certified letters actually aren't always good if someone is not there so what you should do the reasonable additional steps would include sending regular mail just as we did here it would set do sending letters to an occupant just as we did here so we actually did everything we should have done here except that you didn't have a certified letter well we didn't have to we didn't have to have a certified letter neither the statute nor due process requires us to send a certified letter to an address where we don't we have no confidence that he lives we got lots of addresses for Mr. Crockett we got his parents address we got his sister's address we got his old address on Blackstone in Chicago and we got another address on the same street as his parents lived that he said he had used to escape some sort of title issue so we got a lot of addresses this you know we can't the DCFS cannot afford to send certified letters to every single address we find for every single missing parent and remember the way that the both the Supreme the Supreme Court has said that when you have a putative father like Mr. Crockett a father who has not married the mother who has not you know done anything to create the presumption of paternity well first of all we didn't know that we didn't have access to that information and second of all that that doesn't create the presumption of paternity that's not under Illinois law certainly I mean it's I know that the the Mr. Crockett's attorney says in the reply brief that the agreement between the mother and the father that he would pay child support through disability somehow creates a presumption of paternity under the statute but that's not true so I mean the statute does not mention any sort of agreement between parents that's creating a so again there's no presumption of paternity certainly none that we knew here and when you have only a putative father the Supreme Court both this court excuse me but the Supreme Court in layer you know held that the the existence of the registry where the father would have put his social security number his date of birth all the information you need to find somebody you know how to spell your name all of those things that's what that's the existence that's why the putative father exists and the Supreme Court held that the very existence of the putative father registry satisfies due process with regard to notice and in fact subsequently in Michael H the United States Supreme Court said in fact when you have only a putative father the plurality said when you have only a putative father we don't even know if there's a liberty interest to be protected here I'm sorry DCFS asked the mother if she was getting child support uh no what she what the mother told them was I'm getting child support I'm speaking as the mom and the children are getting it through me and again we couldn't we couldn't check that we don't have access DCFS doesn't have access to the social security database so we couldn't do that now um if uh I just briefly want to get to a couple of other issues here um unless the court has questions um I do want to um mention that um you know certainly the search here was was exceptionally diligent we sent many letters they never came back they um to both to addresses that the that Mr. Crockett says he still receives money we did not DCFS did not have the address um his new address in Park City in fact there's no evidence subsequent to the face of the record that explains how DHFS which is the party to the child support proceeding I want to make that very clear in the reply brief Mr. Crockett says DCFS was the petitioner in the child support proceeding that is not true the department of health care and family services is the plaintiff in all child support cases and so what they know is not necessarily what it was is not what DCFS knows and in fact there was again no evidence even at the 1401 hearing that anyone involved in this case knew what the people eventually discovered in the child support case remember that initially this and chief of MI asked this question even though the light is red so is this evidence did someone testify to this that was my question before as to the uh non-support case who knew what was there evidence presented as to that first of all there was certainly no evidence before the termination order and with regard to the um to the 214-01 proceeding there was no evidence and and the circuit court is very clear about this in its in its um in oral decision there was no evidence that anyone in the support case not the eight not the state's assistant state's attorney who was handling this case below not the child case worker nobody actually knew that his address was in park city and nobody there was also no evidence as to how that case the people working on that case discovered his park city address so um if i may conclude i see my time is up um for the reasons that we stated um in our brief also at oral argument we asked that the court find that there was no abuse of discretion in um denying mr crockett's post-judgment motion and and to have granted it in fact would be contrary to the statute to the act's purpose which is to quickly set permanency for children to grant him a return to for a best interest hearing for a termination hearing would in fact risk placing these children in foster care limbo which is not in their best interest thank you your honors um the evidence of the child support case actually did come in before the termination order was entered as i mentioned earlier it came in at the child at the best interest hearing on the petition to terminate coronal rights um this council referred to park city address uh which is really not not at issue here because um the record in the child support case reflects that um the that mr crockett was served by mail to his sister's address in lake phillip illinois the petitioner in uh the child support case is in fact and the court can look at the record illinois foster care which is part of dcfs if the court were to refer to the order in that at dcfs to say that there was no presumption of paternity in this case is flatly false because the child support case is based on an acknowledgement of paternity by mr crockett he was not a putative father to in the sense of never having had any contact with these children he lived with the mother and the children until he became ill and he was he supported the children there was a legal relationship there which and that acknowledgement of paternity the court below relied on inray dj uh to excuse um this lack of statement of diligent uh of lack um to effectuate service um the trial court and dj had made specific findings of due diligence based on on testimony that it had heard and only then did the court give the state leave to serve notice to the respondent by publication dj does not excuse non-compliance with section 2-16 sub 2 it merely states that under the particular facts of that case the lack of a statement of evidence on the record of efforts that had been made to locate and serve the respondent and there is nothing of that sort here in this case john counsel argues that any infirmity in the service as the judicatory hearing really doesn't matter because that was interlocutory and in the interim before the termination order there were various other attempts at service and diligent search to find him can you respond to that um i think it's absolutely essential for us to um to make the argument and to make the the case that the the adjudicatory order is void because um it's not simply interlocutory what the interlocular interlocutory uh what the lower court decided was that the um subsequent service by um by um publication was unnecessary in this case as to that first hearing what about the termination i'm talking about the termination that the lower court never got to the termination because they said service was good at the adjudicatory stage so if service is good at the adjudicatory stage then the cases say that if if a respondent does not participate in the in the lawsuit then um he doesn't need to be served at the at termination can you respond to the arguments made here that by the time the termination order was entered there had been a number of different searches yes before the second publication took place um if in fact um we are relying on the on service by publication that would be factually correct however we make the case of the case in um in our briefs that um service by publication at termination was was not appropriate because at that point both dcfs and the state knew um mr procter's address and the statute does not permit could you respond to that they say yes we had a series of addresses and we sent letters to each one of those addresses i'm are you saying that that's insufficient no i'm saying that because of the child support case which was filed before the termination the that dcfs because the the caseworker laura seidelman verified the complaint for support because dcfs is the payee and the petitioner in that child support case they had actual knowledge of mr procter's address he was contacted his sister's house and he cooperated with the child support people the state the state's attorney's office for child support enforcement and that's in our record yes it is your honor um and the state also should have known the state has has vast powers at its disposal uh the state should have done an ages search it could have found this case because it was the case was filed not merely in the same circuit but in the same county i mean it was in the same courthouse it would have been an easy thing to find out and so it's constitutionally i think fundamentally unfair to um to mr crockett to allow the state to because we did this publication he was adequately served i think that simply does not does not pass constitutional muster so your your argument is it isn't a question that the just that the affidavit for publication was defective your argument is publication wasn't appropriate here at all at the second publication your honor the defective publication was that adjudication of took place prior to termination it was a petition to terminate so they're two totally different orders and we make two different arguments with regard to the orders do you have any authority counsel attributing knowledge possessed by the state or the dcfs or in the public record to every individual employee um no not to every individual employee your honor but it would seem um incumbent on these organizations to do an internal search they they deal with numerous parents um dcfs in particular has so many cases involving many of the same parties but no authority for that no authority no your honor counsel what uh in your 214-01 petition what specifically i mean i know i can see this in the in the record but i want you to remind me what specific specific relief are you or reverse the appellate court and the the um the um trial court and um but what specifically in the trial court which order the order orders well we're here just on the 214-01 petition i mean that's the hurdle that needs to be i know and it but it attacks i mean you filed it not before the appellate court you filed it before the circuit court yes what specifically were you to have his day in court basically to set aside uh to allow him to participate in the lawsuit and to vacate the order but that's the conclusion that's awarded but what to get there what were you asking the court to undo the termination order and the adjudication order uh to the extent that it would um prevent him from participating in a in a meaningful way um in a trial to prove his fitness and to prove up what he considers to be the best interest of the children if the court has no further questions i would rest on my briefs thank you case number one one one zero eight three agenda number five n ray star c and crockett is taken under advisement mr marshall the supreme court stands adjourned until tomorrow morning at 9 30 a.m